[No. 29678. Department Two. October 25, 1945.]

HENRY T. SCHINAMAN et al., *Appellants,* v. SKAMANIA COUNTY, *Respondent.*[1]

[1]Reported in 162 P. (2d) 827.

*Schaefer & Hall* (*Hampson, Koerner, Young & Swett* and *John Gordon Gearin,* of counsel), for appellants.

*R. M. Wright* and *Raymond C. Sly,* for respondent.

BLAKE, J.—Plaintiffs brought this action to recover for injuries sustained and for damage to property as the result of a collision of the automobile in which they were riding with an unguarded obstruction in what was alleged to be a county road.

The cause was tried to a jury, which returned verdicts in favor of plaintiffs. Defendant interposed motions for judgment notwithstanding the verdicts or, in the alternative, for new trial. The court denied the latter and granted the former. From judgment accordingly entered, plaintiffs appeal.

The court granted respondent's motions for judgment notwithstanding the verdicts on the sole ground that the county cannot be held liable because the place where the collision occurred was a state highway, and not a county road. And, since respondent has not appealed from the orders denying its motions for a new trial, that is the sole question presented on appeal: whether the obstruction with which the automobile collided was in a state highway or a county road.

Admittedly, the road where the accident occurred was, prior to 1939, a part of primary state highway No. 8. Appellants contend, however, that it had ceased to be a part of primary state highway No. 8 long before the date of the accident (August 21, 1941) by virtue of a certificate made by the director of highways pursuant to the Laws of 1937, chapter 187, p. 738, § 10 (Rem. Rev. Stat., Vol. 7A, § 6450-10 [P. P. C. § 608-3]), which provides:

". . . All public highways in this state which have been a part of the route of a primary state highway and have been or may hereafter be no longer necessary as such shall, upon certification thereof by the director of highways to the board of county commissioners of the county in which

any portion of such highway may be located henceforth, be and become a county road of such county."

In 1938, a relocation of a portion of primary state highway No. 8 was effected, which rendered the segment of the road where the accident occurred "no longer necessary as such." Construction of the highway as relocated was completed in November, 1938, but it was not opened for traffic until the summer of 1939.

During the progress of the construction work on the relocation project, the director of highways, August 3, 1938, addressed a letter to the board of county commissioners as follows:

"Under the provisions of section 10, chapter 187, and section 20, chapter 207, Laws of 1937, there is hereby certified to your board a portion of the route of primary state highway which is no longer necessary as such and which is being transferred to you to become a county road of your county. The date of transfer is approximate only and you will be notified by Mr. E. C. Simpson, District Engineer for this department, as to the exact date of the transfer. You should, however, provide in your budget for the maintenance of such section of highway from the date set forth in this notice.

"*Primary State Highway No. 8:*

"Beginning approximately 120 feet west of the easterly line of the Felix G. Inman D. L. C., and approximately 185 feet west of the south line of Sec. 2, T. 2 N. R. 7 E. W. M. thence easterly to the junction of the present traveled route with the westerly corporate limits of the town of Stevenson at approximately Sta 107 + 40 (present traveled route), which point is located on the easterly bank of Rock Creek in Sec. 1, T. 2 N. R. 7 E. W. M.

"Date of transfer January 1, 1939."

The certification was made, of course, prior to the abandonment of the segment of road described as a part of primary state highway No. 8. With respect to the "exact date of the transfer," Mr. Simpson testified:

"Q. You will note from the bottom of the last paragraph of the letter, the date of transfer was January 1, 1939. Will you explain what your duties would have been with regard to notifying the county as to the exact date of transfer?

. . . What was done? A. I am unable to find any record that required the county be notified when the new highway was opened, . . . Q. After the date of the completion of the new portion of the road, will you state whether or not the State altered, repaired, improved or maintained any portion of the road upon which the accident occurred? . . . A. No, we did not maintain the old road. Q. To your knowledge no written notification was given to the county of the exact date of transfer? A. Would you repeat that question? Q. I take it your testimony is that after this letter of August third, 1938, was written to the county, that you gave no written notice to the county of the date, exact date of that transfer? A. I was unable to find a record of it. Q. When was the new highway formally opened to traffic? A. The summer of 1939. Q. Remained open at all times thereafter? A. Yes, sir."

█ Despite the fact that there was no record of a written notice of transfer, we think it is clear from the evidence that the segment of highway described actually ceased to be a part of primary state highway No. 8 not later than the summer of 1939—two years before the accident occurred.

Furthermore, we think it is also clear from the evidence that the county assumed jurisdiction of the road pursuant to the terms of the certification made by the director of highways on August 3, 1938. A member of the board of county commissioners testified:

"2. Had the county commissioners ever given permission to the state highway department to deposit material on that road? A. Yes. . . . Q. You say that the county commissioners had given the State permission to put material on that road? A. Yes, sir. Q. When was that, do you know? A. I could not say exactly. It was prior to the time it was put there. Q. Was that prior to the time of the accident? A. Yes, sir. Q. About how long? A. I could not say definitely. It was mostly—a long time ago. It was verbal and there was no record of it here. I cannot say."

█ That the letter of the director of highways was intended as a "certification" under the provisions of Rem. Rev. Stat., Vol. 7A, § 6450-10, there can be no doubt. And we think that it constituted a substantial compliance with the requirements of the statute, notwithstanding it was

dated before the completion of the relocation project and specified January 1, 1939, as "date of transfer."

█ Upon the record we have before us, there can be no doubt that, pursuant to it, the segment of highway described became, and was, accepted by the board of county commissioners as a county road long before the accident to appellants occurred. The duty of maintaining the road in a reasonably safe condition for public travel was cast upon, and accepted by, the county.

The judgment is reversed and the cause is remanded, with direction to enter judgment on the verdicts.

BEALS, C. J., ROBINSON, JEFFERS, and GRADY, JJ., concur.

